## N. S. and BROWN WARD v. THE STATE.

1. CRIMINAL LAW. *Obstructing public roads.* When the overseer of a public road in opening the road does not follow the line of the survey of the commissioners who laid it off, but goes through the farm and lot of an adjacent land owner, and throws down the fences, the putting up the fences by such land owner is not an offense.

2. OPENING A PUBLIC ROAD. It is the duty of commissioners, in opening a public road, to go upon the ground after giving the notice required by law, and determine whether the change is a public necessity, and if so, lay off the road in such manner as to work the least injury to the land owners.

### FROM LINCOLN.

Appeal in error from the Circuit Court of Lincoln county. J. J. WILLIAMS, J.

HOLMAN & HOLMAN for Ward.

ATTORNEY-GENERAL LEA for the State.

TURNEY, J., delivered the opinion of the court.

Plaintiffs in error were indicted for obstructing a public road.

The grand jury made a report to the court that the offense had been committed, and that it knew of no one who would agree or could be procured to become prosecutor, therefore the court ordered "that the Attorney-General file an indictment officially, and prosecute the same officially without a prosecutor," which was done and a conviction had.

The facts are, that certain citizens of Lincoln county petitioned the road commissioners to change a road and locate it upon the line between the lands of Catharine Tucker, Emiline Waggoner and T. C. Sullenger, on one side, and E. Ward on the other side.

The commissioners, without knowing where that line was, without a survey, reported to the court that they had so changed and located the road. The report was confirmed and an overseer appointed, who undertook to establish the road from the statement of a chain carrier as to the line between the parties named.

Instead of pursuing the line, he no where touched it, but went through the heart of the farm of Ward, and through his horse lot, and threw down the fences. Putting up the fences is the obstruction complained of. It was the duty of the commissioners to have gone upon the ground after giving the notice required by law, to have determined whether the change was a public necessity, and if so to have laid off the road in such manner as would have worked the least injury to land owners. The interest of the public or the wishes of petitioners should not have controlled altogether, that of the land owners must be consulted as well, and the just compensation provided for by the Constitution should have been fixed.

The overseer and his hands were liable to civil and criminal prosecution for the trespass they committed. The defendants were not guilty of any offense in putting up the fences thrown down.

It is evident, if the facts shown by the record are true, that the grand jury and court were imposed upon,

and that one J. W. Stiles, a witness for the State, is father to the prosecution, which is malicious on his part. He was road commissioner when the litigation was had in the county court, and is proven, and in the main admits to have said, "it did not cost him any thing to law the Wards, that the State would do his lawing, and that he was going to make it cost the Wards as much as possible, that if it had been any body else but E. C. Ward, he would not have run the road over his field." It is clear to us, that it was through his manipulations, in some way, the grand jury was induced to make its report to the court that no one would prosecute, and that an offense had been committed.

He was carrying out his declared purpose of having the State to do his lawing and heaping costs upon the Wards. Through this prosecution he seeks to visit a malicious, wicked vengeance upon a neighbor. He was wholly unfit for the trust confided to him. It was he who directed the overseer to go and open the road, and to get a chain carrier to show him the line.

The court refused to charge as requested: "If the commissioners, in their report, located the road on a line between Ward on one side, and Tucker, Waggoner and Sullenger on the other, and that line was a marked and notorious line, and their report was confirmed by the county court, the overseer of said road would be allowed only to open the road on said line, and if instead of opening the road on said line, he went to another place forty or fifty yards down in Ward's field and threw the fence down, the defendants

would have a right to put the fence up at that point, as an order to open the road on said line would not be legal authority to open a road at another place."

The refusal was error. It was the duty of the overseer to work the road as laid out, and he was not authorized to select another and different site or location, whatever may have been his reasons or motives.

There is absolutely no evidence to support the verdict. The judgment is reversed and if the Atorney-General thinks proper a *nolle prosequi* will be entered.